UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRITTNEY MENEFEE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TACOMA PUBLIC SCHOOL DISTRICT NO. 10, et al., <br><br> Defendants. | CASE NO. C17-6037 BHS <br><br> ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on Defendant Steven Holmes's motion to dismiss. Dkt. 8. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On December 12, 2017, Plaintiffs T.D.F. and Brittney Menefee filed their complaint in this action. Dkt. 1. Plaintiffs have asserted claims under 42 U.S.C. § 1983 against Defendants Tacoma Public School District No. 10, Sandra Holmes, and Steven Holmes arising from an alleged sexual assault on T.D.F. by one of her kindergarten classmates. *Id*. Plaintiffs have also asserted claims against the school district under Title IX. *Id.*

On January 17, 2018, Steven Holmes moved to dismiss the complaint to the extent it asserted claims against him under 42 U.S.C. § 1983. Dkt. 8. On February 5, 2018, Plaintiffs responded. Dkt. 12. On February 9, 2018, Steven Holmes replied. Dkt. 13.

## II. FACTUAL BACKGROUND

In 2013, Defendant Sandra Holmes was a kindergarten teacher in Tacoma, Washington, and Steven Holmes (unrelated to Sandra Holmes) was the school's principal. Dkt. 1 at 4. From September of 2013 until December 4, 2013, Defendant Sandra Holmes took a medical leave, during which her kindergarten class was taught by a substitute teacher, Megan Clark ("Clark"). *Id.* On December 4, 2013, a meeting was held wherein Steven Holmes and Sandra Holmes met with T.D.F.'s parents, who expressed concern that Sandra Holmes was known as being "the worst [teacher] in the school," and that "a survey of other parents" proved it. *Id.* At the meeting, T.D.F.'s mother requested a different teacher. *Id.*

During the transition from Clark to Sandra Holmes, Clark alerted Sandra Holmes to a danger posed by one of the male students in the classroom. *Id.* The male student had reportedly engaged in dangerous behaviors, including sexually inappropriate touching of a female student. *Id.* As a result, Clark had implemented procedures to prevent potentially dangerous and sexually inappropriate behaviors, such as structured bathroom rules that allowed only one student to use the restroom at a time in order. *Id.* After the transition, Sandra Holmes did not enforce the rules established by Megan Clark regarding bathroom use. *Id.* at 5.

In December of 2013, after the transition, Sandra Holmes informed the school counselor that the aforementioned male student had "a touching problem" and that he had "been touching kids in [her] class." *Id.* at 4. She stated that the counselor needed to "get him help." *Id.* However, Sandra Holmes did not report the behavior of the male student to law enforcement or the Child Protective Services ("CPS") agency within Washington's Department of Social and Health Services ("DSHS"). *Id.* at 5.

Within two months of the transition back to Sandra Holmes's teaching, Steven Holmes received approximately sixty complaints regarding Sandra Holmes. *Id.* at 4. Despite these complaints, Steven Holmes did not reprimand Sandra Holmes, replace her, or provide additional oversight of her teaching until January 16, 2014. *Id.*

On January 16, 2014, Steven Holmes issued a "letter of direction" to Sandra Holmes for unprofessional conduct, including:

> 1. Releasing students to other adults not on the contact list (3 instances);"
> 2. Having an (unknown) parent watch the class while Defendant Sandra Holmes exited her classroom to go to the staffroom;
> 3. Grabbing a student by the shirt and others by the arm to line up;
> 4. Not knowing the first and last names of her students by the sixth week;
> 5. Leaving a child in a timeout for 1.5 hours; and
> 6. Allowing kindergarten students to answer the classroom telephone.

*Id.* Sandra Holmes admitted to these violations. *Id.* Steven Holmes also gave specific directions to help Sandra Holmes avoid such conduct in the future. *Id.* The letter included a warning that failure to follow the directions would result in discipline, including the possibility of termination of Sandra Holmes's employment. *Id.*

On an unspecified date in mid-January of 2014, the mother of one of Sandra Holmes's students emailed Sandra Holmes and informed her that a male student in the class had asked to touch her daughter's genital area that day. *Id.* at 6. The mother reminded Sandra Holmes that the same student "had inappropriately touched her daughter in the fall" and requested that her daughter be placed in a different class. *Id.* Sandra Holmes notified Steven Holmes of this complaint. Neither Sandra Holmes nor Steven Holmes informed law enforcement or CPS of this incident, even though the School District's policy no. 3421 and RCW required district employees who have "reasonable cause" to believe a child has suffered from abuse to report the incident. *Id.*

On January 23, 2014, Sandra Holmes left her class unsupervised notwithstanding the previous warning. *Id.* at 5. A parent volunteer at the school discovered the unsupervised classroom and monitored the classroom until Sandra Holmes returned. *Id.* When Sandra Holmes returned, she asked the parent volunteer whom she had never met to watch the class while she went to lunch. *Id.*

On January 31, 2014, Steven Holmes conducted a classroom observation of Sandra Holmes's class. *Id.* at 6. His observation found the classroom to be unsafe. *Id.* During the observation, a student left the group and was unnoticed while coloring on a whiteboard for approximately 20 minutes, until directed back to the group by a parent volunteer. *Id.* During an unannounced fire drill that day, Sandra Holmes left a student behind in the classroom who was eventually escorted out by someone else. *Id.*

On February 5, 2014, T.D.F. was found without her pants and underwear during recess. *Id.* Another staff member reported this to Sandra Holmes. *Id.* Sandra Holmes

responded that she "hoped this conduct would not continue because it was not the first time [T.D.F.] had been found without her clothes on." *Id.* Sandra Holmes did not report this incident, nor had she reported any other incidents involving T.D.F., to Steven Holmes, law enforcement, or CPS. *Id.* at 6–7.

On February 7, 2014, T.D.F.'s mother observed after school that T.D.F.'s clothes and hair were disheveled and her pants were unbuttoned and unzipped so that her underwear was exposed. *Id.* at 7. T.D.F. revealed to her mother that the aforementioned male student in her class had "crawled under a table during class, removed her pants, and orally copulated her private parts." *Id.* T.D.F.'s mother contacted Steven Holmes by phone and Steven Holmes then reported the incident to law enforcement. *Id.* The act of sexual abuse on T.D.F. had been unnoticed by Sandra Holmes although it occurred in her classroom. *Id.*

A subsequent investigation by law enforcement "established an institutional loss of control in Defendant Sandra Holmes'[s] classroom that threatened the health and well-being of all students in class, and that sexual abuse had been occurring for some time." *Id.*

### III. DISCUSSION

Steven Holmes has moved to dismiss Plaintiffs' claims against him pursuant to Rule 12(b)(6). Dkt. 8. He argues that Plaintiffs have failed to state a claim against him upon which relief can be granted because he is entitled to qualified immunity under the facts as alleged in Plaintiffs' complaint. *Id.*

**A.     Standard**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

Additionally, "[g]overnment officials performing discretionary functions enjoy qualified immunity from civil damages so long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Under qualified immunity, a public official is protected from suit when he or she "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Qualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quotation marks

omitted). Accordingly, to adequately plead a claim against such government officials, Plaintiffs bear the burden of pleading facts that demonstrate that a violation of a right that was clearly established at the time of the alleged misconduct. *See id.*

**B.     42 U.S.C. § 1983 Claims Against Steven Holmes**

Steven Holmes advances two arguments to suggest that he is entitled to qualified immunity. First, he argues that Plaintiffs have failed to specify a particular federal right that was violated by Steven Holmes's alleged conduct. Second, he argues that Plaintiffs have failed to allege facts demonstrating that his failure to prevent the male kindergartner's abuse of T.D.F. violated a clearly established right of Plaintiffs.

**1.     Implicated Federal Rights**

Steven Holmes's first argument asserts that "Plaintiff never states what constitutional right Mr. Holmes purportedly violated" beyond "mere conclusions that he violated Plaintiff's Ninth and Fourteenth Amendment rights by allegedly creating a danger that Plaintiff would be sexually abused and by failing to protect Plaintiff from such purported abuse." Dkt. 8. Steven Holmes continues to note that "[g]eneralized allegations of constitutional violations, however, are insufficient to rebut an official's assertion of a qualified immunity defense." *Id.* (quoting *Maraziti v. First Interstate Bank of California*, 953 F.2d 520, 524 (9th Cir. 1992) (citation omitted)).

Steven Holmes is correct that Plaintiffs have failed to state any viable claim based on alleged violations of the Ninth Amendment. "[T]he ninth amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986).

Nonetheless, the due process rights secured by the Fourteenth Amendment include "the right to be free from state-imposed violations of bodily integrity" and it is well-established that sexual abuse violates that right. *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). The question of whether a school official's failure to prevent student-on-student sexual abuse constitutes a violation of a clearly established federal right actionable under 42 U.S.C. § 1983 warrants substantive discussion and is addressed below in this order. However, for the purposes of addressing Steven Holmes's first argument, it is sufficient for the Court to note that the complaint sets out a specific allegation of sexual abuse which, if "state-imposed," would constitute a grave violation of T.D.F.'s right to bodily integrity under the Fourteenth Amendment. The right to bodily integrity is plainly implicated by Plaintiffs' factual allegations of sexual abuse and Plaintiffs specifically claim that such abuse violated T.D.F.'s Fourteenth Amendment due process rights.

### 2. Liability for Third-Party Acts

Steven Holmes also moves to dismiss the claims against him on the basis that Plaintiffs have failed to allege facts demonstrating that he can be liable under 42 U.S.C. § 1983 for sexual abuse perpetrated by a third party. Specifically, Steven Holmes argues that Plaintiffs fail to allege facts that overcome "[t]he general rule announced in *DeShaney* that members of the public have no constitutional right to sue state actors who fail to protect them from harm inflicted by third parties." *Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007) (citing *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 195 (1989) ("[N]othing in the language of the Due Process Clause itself

requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.")).

Under the *DeShaney* rule, liability for 42 U.S.C. § 1983 due process violations is precluded when the harm is inflicted by a private actor unless a plaintiff can establish that the abuse grew out of a "state created danger" or the government defendant had a "special relationship" with the plaintiff. *See Johnson*, 474 F.3d at 639. Plaintiffs' complaint makes clear that T.D.F.'s cause of action against Steven Holmes is predicated on his "actions in failing to promulgate, issue, and enforce appropriate procedures and policies concerning the protection of its students including T.D.F. who suffered sexual abuse and exploitation" at the hands of a private actor. Dkt. 1 at 8. Accordingly, to state a viable due process claim against Steven Holmes under 42 U.S.C. § 1983, Plaintiffs must allege facts showing either that Steven Holmes had a "special relationship" with T.D.F. or Steven Holmes's actions resulted in a "state created danger" out of which T.D.F.'s abuse grew.

Plaintiffs have conceded that the special-relationship exception does not apply to Plaintiffs' claims. Dkt. 12 at 14 n.48. Indeed, "[t]he special-relationship exception does not apply when a state fails to protect a person who is not in custody," *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 972 (9th Cir. 2011), and the Ninth Circuit has concluded that "[c]ompulsory school attendance and *in loco parentis* status do not create 'custody' under the strict standard of *DeShaney*." *Id.* at 973. Accordingly, the viability of Plaintiffs' 42 U.S.C. § 1983 claims against Steven Holmes turns on whether any of his actions constitute a basis for imposing liability under the "danger-creation" exception.

The Ninth Circuit's "'state-created danger' cases . . . contemplate § 1983 liability for the state actor who, though not inflicting plaintiff's injury himself, has placed plaintiff in the harmful path of a third party not liable under § 1983." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1082 (9th Cir. 2006). This exception applies only where (1) there is "affirmative conduct on the part of the [defendant] in placing the plaintiff in danger" and (2) the defendant "acts with 'deliberate indifference' to a 'known or obvious danger.'" *Patel*, 648 F.3d at 974 (quoting *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000); *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)).

### a. Affirmative Acts Under the Danger-Creation Exception

The touchstone for determining if an official has taken an affirmative act under the danger-creation exception is "whether the officers left the person in a situation that was more dangerous than the one in which they found him." *Munger*, 227 F.3d at 1086. In *Johnson*, the Ninth Circuit examined cases where it had previously recognized affirmative acts that implicated the danger-creation exception. 474 F.3d 634. Examining those cases, the Ninth Circuit noted that it had only found affirmative state actions when (1) there was "involuntary exposure to harm, as a result of a state actor's command," (2) "the state actor exposed the plaintiff to a danger which she otherwise would not have faced," or (3) state actors "confine[d] the . . . Plaintiffs to a place where they would be exposed to a risk of harm by private persons." *Id.* at 640–41. For instance, in *Grubbs*, a medium-security prison assigned a nurse to work unknowingly alongside a dangerous sex offender who had failed all the institution's treatment programs, despite previous assurances that she would not be required to work alone with violent sex offenders. *See*

*Grubbs*, 974 F.2d 119. In *Penilla*, the danger-creation exception applied when police locked a seriously ill person in his house and cancelled a neighbor's 911 request for emergency services. *Penilla v. City of Huntington Park*, 115 F.3d 707, 710–11 (9th Cir. 1997). In *Munger*, police expelled a belligerent and intoxicated bar patron, wearing only a T-shirt and jeans, into subfreezing temperatures where he died of hypothermia only two blocks away. *Munger*, 227 F.3d at 1084–85. In *Kennedy*, police assured a mother who had reported the molestation of her daughter that they would give her notice prior to contacting the accused neighbor. *Kennedy*, 439 F.3d at 1057–58. The police failed to provide notice to the mother before contacting the neighbor and, early the next morning, she was shot in her bed while sleeping. *Id.* at 1058. In each of these cases, the government actively exposed the victim to a risk of harm that was involuntary on the part of the victim. Accordingly, in each of these cases, it could be said that the government "affirmatively created an actual, particularized danger [the plaintiffs] would not otherwise have faced." *Kennedy*, 439 F.3d at 1063.

However, in *Johnson*, the Ninth Circuit concluded that the defendant police officers had not engaged in any affirmative conduct that satisfied the first prong of the danger-creation exception. In that case, the plaintiffs had been assaulted, injured, and in one case killed by a crowd during a Mardi Gras celebration. *Johnson*, 474 F.3d at 637. The plaintiffs alleged that police had been deliberately indifferent to their safety by abandoning an aggressive crowd-control operational plan in favor of a more passive one. *Id.* at 639. Ultimately, the Ninth Circuit concluded that the danger-creation exception did not apply because the plaintiffs "failed to offer evidence that the Defendants engaged in

affirmative conduct that enhanced the dangers the . . . Plaintiffs exposed themselves to by participating in the Mardi Gras celebration." *Id.* at 641.

Until December 4, 2013, T.D.F.'s class was taught by Megan Clark. Notwithstanding requests to Steven Holmes that Sandra Holmes not be placed in charge of T.D.F.'s class, Sandra Holmes resumed her teaching duties on December 4, 2013. Later, in January of 2014, Steven Holmes was made aware of multiple instances of sexual abuse that had occurred in Sandra Holmes's kindergarten class, including when a male student had inappropriately touched a female student and had again subsequently asked to touch the female student's genital area. Dkt. 1 at 6. Steven Holmes also had prior knowledge that Sandra Holmes's classroom presented a dangerous environment of inattention. *Id.* at 4–7. Steven Holmes had received approximately sixty complaints regarding Sandra Holmes and had himself observed that Sandra Holmes's classroom was an unsafe environment. Despite this knowledge, Steven Holmes failed to report the sexual abuse of which he learned in January of 2014 as required under the school district's policy no. 3421. *Id.* at 7. It was not until February 7, 2014 that Steven Holmes reported any instances of sexual abuse occurring in Sandra Holmes's classroom upon learning of the sexual abuse against T.D.F. *Id.*

Ultimately, these allegations amount to assertions that Steven Holmes failed to implement reasonable corrective actions. Plaintiffs do not allege that Steven Holmes took an affirmative act in assigning Sandra Holmes to T.D.F.'s class. Rather, the complaint states that Sandra Holmes returned from medical leave to a classroom that was hers already. Furthermore, the complaint does not allege that Steven Holmes participated in

any acts that contributed to dangers in the classroom, but only that he failed to abate dangers that he knew to exist. Under the Ninth Circuit's construction of the danger-creation exception, an affirmative act cannot be based "on omissions of the state, regardless of how egregious—the state must take some action that affirmatively places the plaintiff in a position of danger, that is, where the state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *I.V. v. Wenatchee Sch. Dist. No. 246*, 2:17-CV-0118-TOR, 2017 WL 4683424, at *5 (E.D. Wash. Oct. 18, 2017) (quotation marks omitted). Accordingly, the Court must find that Plaintiffs have failed to allege facts that satisfy the requirements of the danger-creation exception to the limits on liability under § 1983 due process claims for private third-party acts.

The Court notes that some extra-circuit authority suggests that a failure to report sexual abuse in accordance with applicable guidelines can, on its own, constitute an unconstitutional affirmative action if it proximately causes a constitutional deprivation. *See e.g., Doe v. New York City Dep't of Soc. Servs.*, 649 F.2d 134, 146 (2d Cir. 1981) ("[T]he failure to report *was itself a proximate cause of [a] continuing injury and could be the basis for liability* if the agency's failure was the result of its being deliberately unconcerned about whether it complied with that duty, since reporting would have led to an investigation by the Department's confidential investigations unit which might well have discovered the abuse and put an end to it . . . .") (emphasis added). The Court has previously relied on such authority in determining whether adequate evidence supported a theory of deliberate indifference. *W.H. v. Olympia Sch. Dist.*, C16-5273 BHS, 2017 WL

3581632, at *7 (W.D. Wash. Aug. 18, 2017), *reconsideration denied*, C16-5273 BHS, 2017 WL 4408034 (W.D. Wash. Oct. 4, 2017). However, such authority is not binding in the Ninth Circuit, and is insufficient on its own to clearly establish that the failure to comply with mandatory reporting requirements constitutes an affirmative act under the danger-creation exception. Even if a court were inclined to find that the law should allow claims predicated on egregious omissions such as failures to comply with mandatory reporting requirements under a new formulation of the danger-creation exception, such a ruling would be of no avail in Plaintiffs' claims against Steven Holmes. Steven Holmes would still be entitled to qualified immunity on the basis that it was not clearly established at the time of T.D.F.'s abuse that the omissions contributing to his failure to protect T.D.F from a third-party private actor constituted due process violations.

          **b.    Deliberate Indifference**

Even though the Court has found that Plaintiffs have presently failed to allege an affirmative act within the clearly established contours of the danger-creation exception, it is important for the purposes of amended pleadings that the Court still address whether Plaintiffs have alleged facts supporting a theory that any presently unpled affirmative acts by Steven Holmes were carried out with deliberate indifference to T.D.F.'s safety. While the Court has not clearly established that a failure to report in compliance with mandatory reporting requirements is an "affirmative act" within the meaning of the danger-creation exception, the Court concludes that a failure to comply with reporting requirements does evince a plausible theory of deliberate indifference towards children's right to bodily integrity. *New York City Dep't of Soc. Servs.*, 649 F.2d at 146 (stating that failure to

comply with reporting duties is "evidence of an overall posture of deliberate indifference toward [a child]'s welfare."). Moreover, Plaintiffs have alleged additional facts indicating that Steven Holmes acted with an attitude of deliberate indifference towards a known risk to the safety of the children in Sandra Holmes's class. Despite approximately sixty complaints about Sandra Holmes's classroom, a "letter of direction" that he drafted, and Steven Holmes's own alleged observations of Sandra Holmes's inadequate supervision in her classroom that constituted failures to comply the "letter of direction," Steven Holmes allowed Sandra Holmes to continue teaching without taking any discipline or actions that would abate the immediate risk to the children's safety.

Notably, in light of Steven Holmes's "letter of direction" and subsequent classroom observation, whether Steven Holmes's course of action to address the safety concerns in Sandra Holmes's classroom constitutes deliberate indifference is an open question. Generally, an official acts with deliberate indifference if he knows of "a substantial risk of serious harm and disregards that risk *by failing to take reasonable measures to abate it*." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016), *cert. denied sub nom. Los Angeles Cty., Cal. v. Castro*, 137 S. Ct. 831 (2017) (quotation marks omitted) (emphasis in original). Steven Holmes is correct that some facts alleged in the complaint could be construed to suggest that he did not act with deliberate indifference to the children's safety. See Dkt. 8 at 9. It may be that the timeframe of Steven Holmes's "letter of direction" on January 16, 2014, his classroom observation of Sandra Holmes's class on January 31, 2014, and the abuse of T.D.F. on February 5, 2014 ultimately establish that Steven Holmes was actively seeking to abate the unsafe

conditions posed by Sandra Holmes's inattention in a reasonable manner. However, the Court is required to construe the factual allegations in the compliant in the light most favorable to Plaintiffs when evaluating a motion to dismiss. Considering the gravity of the alleged misconduct occurring in Sandra Holmes's classroom and Steven Holmes's alleged knowledge of the children's risk of harm, Plaintiffs have stated a plausible claim that Steven Holmes was aware of an excessive risk to T.D.F. and knew that the remedial measures he was taking were unreasonably inadequate to abate the immediate danger to the children's safety.

**C.     Amending the Complaint**

Plaintiffs have requested that the Court grant them leave to amend any deficiencies in their pleading of 42 U.S.C. § 1983 due process claims against Steven Holmes. Leave to amend an initial pleading may be allowed by leave of the Court and "shall freely be given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a). Granting leave to amend rests in the discretion of the trial court. *Internat'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir. 1985). In determining whether amendment is appropriate, the Court considers five potential factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether there has been previous amendment. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). The Court's decision is guided by the established practice of permitting amendments with "extreme liberality" in order to further the policy of reaching merit-based decisions. *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). In light of this policy, the nonmoving party generally

bears the burden of showing why leave to amend should be denied. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989).

Although Plaintiffs have presently failed to allege that Steven Holmes took any affirmative acts that placed T.D.F. in a position of enhanced danger, it is far from clear that such facts could not be supplied if leave to amend were granted. Steven Holmes has not argued that any other factors other than futility weigh against amendment, and they plainly do not. Therefore, the Court grants Plaintiffs leave to file an amended complaint to cure the inadequacy of their 42 U.S.C. § 1983 due process claims against Steven Holmes.

Also, in their response, Plaintiffs argue that 42 U.S.C. § 1983 provides a cause of action for violations of rights secured under Title IX. Dkt. 12 at 19–22. *See Oona R.-S.-by Kate S. v. McCaffrey*, 143 F.3d 473, 476–78 (9th Cir. 1998). However, the complaint does not assert claims against Steven Holmes under 42 U.S.C. § 1983 for alleged violations of T.D.F.'s rights secured by Title IX. Instead, Plaintiffs' 42 U.S.C. § 1983 claims only reference rights secured by the Ninth and Fourteenth Amendments. Dkt. 1 at 8. Plaintiffs separately bring claims under Title IX's implied cause of action, but those claims are asserted exclusively against the school district, not Steven Holmes. Dkt. 1 at 9. If Plaintiffs seek to bring claims under 42 U.S.C. § 1983 for violations of rights secured by Title IX, or if they wish to bring claims against the individually named defendants under Title IX's implied cause of action, they may move for leave to amend their complaint pursuant to Rule 15 and the Local Civil Rules. Fed. R. Civ. P. 15(a)(2); W.D. Wash. Local Rules LCR 15. However, because the claims against Sandra Holmes and the

school district remain and Plaintiffs are not faced with a complete dismissal of their lawsuit, the Court does not need to consider the propriety of amending the complaint in regards to claims against Sandra Holmes and the school district absent a separate motion employing the Court's local procedures for seeking leave to amend. W.D. Wash. Local Rules LCR 15. Accordingly, while the Court will presently grant Plaintiffs leave to amend the complaint for the limited purpose of alleging affirmative acts by Steven Holmes that enhanced the danger of abuse against T.D.F., it may be expedient for Plaintiffs to instead submit a separate motion for leave to amend that sets out a comprehensive overview of their proposed amendments.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Steven Holmes's motion to dismiss (Dkt. 8) is **GRANTED** and Plaintiffs' 42 U.S.C. § 1983 claims against Steven Holmes are **DISMISSED**. Plaintiffs are granted leave to file an amended complaint for the purpose of curing their presently-asserted 42 U.S.C. § 1983 due process claims against Steven Holmes. Any amended complaint filed pursuant to the leave granted by this order must be submitted no later than April 20, 2018. Otherwise, Plaintiffs may move for leave to amend in a separate motion.

Dated this 29th day of March, 2018.

BENJAMIN H. SETTLE
United States District Judge